UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| HI-TECH PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case |
| | ) | No. 13-cv-3675-WBH |
| v. | ) | |
| | ) | |
| MARGARET A. HAMBURG, M.D., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech"), a dietary supplement

manufacturer and distributor, seeks to halt an *in rem* seizure action brought by the

United States in this Court under the Federal Food, Drug, and Cosmetic Act

("FFDCA"), 21 U.S.C. §§ 301-99, after the United States Food and Drug

Administration ("FDA") administratively detained articles that Hi-Tech identified

as containing 1, 3-dimethylamylamine ("DMAA").[1]  DMAA, an amphetamine

---

[1] Hi-Tech filed its initial Complaint for Declaratory Judgment and Injunctive
Relief on November 5, 2013, four days after FDA administratively detained its
products and two days before the seizure action was filed.  ECF No. 41.  On
November 7, 2013, Hi-Tech filed a corrected Complaint, identically captioned,

1

derivative, is an unapproved food additive that Hi-Tech uses as an ingredient in numerous dietary supplements it manufactures and distributes. Because DMAA is not approved by FDA as a food additive, it is deemed to be an unsafe food additive. Foods that contain unsafe food additives, including dietary supplements, are deemed adulterated under the law.

Rather than proceeding solely within the seizure action, Hi-Tech separately sued Margaret A. Hamburg, Commissioner of Food and Drugs; the FDA; Sylvia Burwell, Secretary of the Department of Health and Human Services; and the Department of Health and Human Services (collectively "FDA"). In its Complaint, Hi-Tech asserts five causes of action under the Declaratory Judgment Act, 28 U.S.C. § 2201, Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Fifth Amendment's Due Process Clause. Hi-Tech seeks to enjoin the pending and any future enforcement action related to DMAA and a declaratory judgment that it may continue to manufacture and market products containing DMAA unless and until FDA bans the substance through formal rulemaking.

---

solely to add addresses for the captioned parties. ECF No. 41-1. The November 7, 2013 Complaint, which is the subject of Defendants' Motion to Dismiss, will be referred to herein as "Complaint" or "Compl."

Hi-Tech's Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Binding precedent establishes that this Court lacks jurisdiction to enjoin FDA from initiating FFDCA enforcement proceedings. Moreover, there has been no final agency action related to DMAA and Hi-Tech's claims are not ripe. In addition, Hi-Tech's claims about the administrative detention are moot because the detention order was dissolved.

Hi-Tech's Complaint also must be dismissed under Rule 12(b)(6) for failure to state a claim for relief. All of Hi-Tech's claims are premised on the unsupported and incorrect legal assertion that FDA may not take enforcement action against dietary supplements containing an unapproved food additive under the FFDCA's food adulteration provisions. It contends, erroneously, that FDA may proceed only under the FFDCA's dietary supplement adulteration provisions and only after FDA has first banned the unapproved food additive through a formal rulemaking proceeding. Hi-Tech's fourth cause of action also must be dismissed for failure to allege a cognizable Due Process violation.

## STATEMENT OF THE CASE

## I. FDA'S AUTHORITY TO REGULATE FOOD, WHICH INCLUDES FOOD ADDITIVES AND DIETARY SUPPLEMENTS

The FFDCA grants FDA the authority to regulate food, including food additives. *See* 21 U.S.C. §§ 321(f) (defining "food" as articles used for food and drink and components of food), 321(s) (defining "food additive" as "any substance the intended use of which results or may reasonably be expected to result, directly or indirectly, in its becoming a component" of food). Under the FFDCA, a food additive ordinarily "shall . . . . be deemed to be unsafe" unless FDA has approved or exempted its use by regulation and its use conforms to such regulation. *Id.* § 348(a).

The Dietary Supplement Health and Education Act of 1994 ("DSHEA"), Pub. L. No. 103-417, 108 Stat. 4325 (1994), amended the FFDCA and provided a framework for FDA to regulate dietary supplements as a subset of food. *See* 21 U.S.C. § 321(ff) (defining "dietary supplement" and deeming such products to be "food"). Among other things, DSHEA exempts from the food additive definition substances that meet the definition of a "dietary ingredient" and are intended for use as ingredients in a dietary supplement. *See id.* § 321(s)(6). Thus, if a

substance meets the "dietary ingredient" definition and is intended for use in a dietary supplement, it is not a "food additive." The converse also is true: if an ingredient in a dietary supplement is not a "dietary ingredient," it is a "food additive" unless it falls within another exemption from the food additive definition.

DSHEA is not a stand-alone statute; its provisions are integrated into the FFDCA. Although dietary supplements generally are regulated under DSHEA, DSHEA is not the sole authority under which FDA may regulate dietary supplements. For example, a dietary supplement may also qualify as a "drug" under the FFDCA. *See United States v. Ten Cartons, More or Less, of an Article*, 72 F.3d 285, 287 (2d Cir. 1995) (per curiam). Similarly, because a dietary supplement is deemed to be food under the FFDCA, it is subject to the FFDCA's food provisions unless expressly exempted therefrom. 21 U.S.C. §§ 321(f), (s), (ff). A dietary supplement containing an ingredient that meets the FFDCA's "food additive" definition is subject to the FFDCA's food additive provisions as well. *See* FDA, *Guidance for Industry: Considerations Regarding Substances Added to Foods, Including Beverages and Dietary Supplements*, Jan. 2014, http://www.fda.gov/food/guidance regulation/guidancedocumentsregulatory information/ucm381315.htm ("[N]on-dietary ingredients added to a dietary

supplement must be used in accordance with" the FFDCA's food additive

provisions).

In the FFDCA, Congress provided FDA numerous enforcement mechanisms

to protect the public health. *See, e.g.*, 21 U.S.C. §§ 332 (injunction), 333 (criminal

prosecution), 334 (seizure). Congress left the choice of enforcement method to

FDA's discretion. *NVE, Inc. v. Dep't of Health & Human Servs.*, 436 F.3d 182,

185-86 (3d Cir. 2006). Although the FFDCA contains a general authority by

which FDA may issue regulations for efficient enforcement of the FFDCA, which

may be used to formally ban substances by rulemaking proceedings, *see* 21 U.S.C.

§ 371(a); *NVE*, 436 F.3d at 186, it does not contain any provision requiring FDA to

formally ban by rulemaking an ingredient in a dietary supplement before it can

bring an enforcement action alleging that the product is adulterated. *See NVE*, 436

F.3d at 186 (FDA may regulate dietary supplements through enforcement actions

or rulemaking); *Se. Minerals, Inc. v. Harris*, 622 F.2d 758, 767 (5th Cir. 1980)

(acknowledging FDA authority to regulate unapproved food additives through

enforcement actions even when rulemaking would have been more efficient).

DSHEA did not alter this balance by requiring FDA to proceed by rulemaking.

*See generally* DSHEA, Pub. L. No. 103-417, 108 Stat. 4325 (1994).

## II. FDA'S ACTIONS AGAINST HI-TECH'S PRODUCTS CONTAINING DMAA

On October 24, 2013, FDA began inspecting Hi-Tech's Georgia facilities that manufacture and store dietary supplements. FDA investigators observed that Hi-Tech was manufacturing and holding dietary supplements and bulk raw materials containing DMAA. FDA investigators had reason to believe that these products were adulterated food, *see* 21 U.S.C. § 342(a)(2)(C)(i), because dietary supplements are food, *id.* § 321(ff), and DMAA is a food additive, *id.* § 321(s), that is unapproved and therefore deemed unsafe, *id.* § 348(a).

On November 1, 2013, pursuant to its statutory and regulatory authority, FDA administratively detained all products labeled or identified by Hi-Tech as containing DMAA, including finished and in-process dietary supplements and raw materials. *See* 21 U.S.C. § 334(h)(1)(A); 21 C.F.R. §§ 1.377-.406 (2013). On November 7, 2013, the United States filed in this Court a forfeiture complaint against Hi-Tech's products labeled or represented to contain DMAA. ECF No. 1. The United States Marshals Service seized those products on November 12, 2013, pursuant to a Warrant of Arrest issued by the Court on November 8, 2013. ECF No. 8. Once the seizure was completed on November 12, FDA notified Hi-Tech

that the administrative detention had terminated.  *See* Detention Termination

Notice, ECF No. 41-13, at 6-7.

On December 17, 2013, Hi-Tech and Jared Wheat, Hi-Tech's CEO and sole

shareholder, filed a verified claim to the seized articles.  ECF No. 11.  In their

Answer to the Amended Complaint, Hi-Tech and Wheat disputed that the articles

are subject to forfeiture and asserted several affirmative defenses.  ECF No. 26.[2]

## III.   HI-TECH'S COMPLAINT

On November 7, 2013, Hi-Tech filed the Complaint that is the subject of this

motion.  *See* Compl., ECF No. 41-1.  Hi-Tech objects on statutory and

constitutional grounds to FDA's activities related to DMAA and seeks to enjoin

any enforcement actions against its products containing DMAA.

Hi-Tech alleges that:  dietary supplements may be regulated solely under

DSHEA, *see, e.g.*, *id.* ¶¶ 31-32, 47; FDA may regulate dietary supplements

containing DMAA only by rulemaking, *see, e.g.*, *id.* ¶ 32; absent a ban by formal

rulemaking, its DMAA-containing products may not be detained or seized, *see id.*

---

[2] On October 9, 2014, the United States filed a Motion to Strike Claimants'
Affirmative Defenses, or Alternatively, Motion for Judgment on the Pleadings,
challenging the validity of several of these defenses.  ECF No. 37.

at 12; and detention and seizure of its products containing DMAA violate the APA and the Fifth Amendment's Due Process Clause, *see id.* ¶¶ 30-61.  Hi-Tech demands sweeping declaratory and injunctive relief that would set aside the now-dissolved detention order and prohibit FDA from taking any enforcement actions against it relating to DMAA unless and until FDA bans DMAA through a formal rulemaking proceeding.  *See, e.g.*, *id.* at 12.

## ARGUMENT

### I. THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER HI-TECH'S INJUNCTIVE CLAIM AND STATUTORY CAUSES OF ACTION

A federal court must dismiss any claim over which it lacks subject matter jurisdiction.  *See, e.g.*, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997); Fed. R. Civ. P. 12(b)(1).  Where, as here, a facial attack is made on subject matter jurisdiction, the factual allegations of the complaint are taken as true.  *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335-36 (11th Cir. 2013).  Hi-Tech bears the burden of establishing jurisdiction.  *See, e.g.*, *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005).

Hi-Tech cannot sustain its burden. Under controlling precedent, this Court lacks jurisdiction to enjoin an enforcement proceeding brought under the FFDCA. Hi-Tech's statutory claims also are not ripe because there has been no final agency action and Hi-Tech has failed to exhaust its administrative remedies. Finally, Hi-Tech's request for relief from the detention order is moot.

## A.   This Court Cannot Enjoin FFDCA Enforcement Actions

Under Supreme Court and Eleventh Circuit authority, district courts lack jurisdiction to enjoin FFDCA enforcement proceedings, including seizure actions. *See, e.g.*, *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 600-01 (1950); *Se. Minerals*, 622 F.2d at 764 (citing *Ewing*).[3]  Contrary to this binding authority, Hi-Tech seeks "preliminary and permanent injunctive relief prohibiting Defendants from detaining or seizing DMAA containing products" and from "using warning letters, detention orders and seizures against DMAA containing products." Compl. at 11, 12, 14, 17, 19, 21.

In *Ewing*, the Supreme Court rejected an attempt by a food supplement distributor to enjoin FFDCA enforcement actions against its products, holding that

---

[3] Decisions of the old Fifth Circuit before October 1, 1981, are binding precedent within the Eleventh Circuit. *See, e.g.*, *Bonner v. City of Prichard*, 661 F.2d 1206, 1209-11 (11th Cir. 1981) (en banc).

district courts lack jurisdiction to enjoin FFDCA enforcement proceedings. *Ewing*, 339 U.S. at 601. Otherwise, by entertaining injunctive actions, courts would engage impermissibly in pre-enforcement review of FDA's enforcement decisions. Such pre-enforcement review "would impair or destroy the effectiveness" of the FFDCA's seizure provisions and transgress Congress's intent to provide the public with the "speedy protection" of the FFDCA's enforcement provisions. *Id.* The Supreme Court has reaffirmed the holding of *Ewing*. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 147-48 (1967) (calling the *Ewing* decision "quite clearly correct" because, to have ruled otherwise, "would have prevented the regular operation of the seizure procedures established by the [FFDCA]"), *abrogated on other grounds*, *Califano v. Sanders*, 430 U.S. 99, 105 (1977).

In *Southeastern Minerals*, the old Fifth Circuit applied *Ewing* and vacated an injunction preventing FDA "from interfering with the manufacturing and marketing" of a company's products. *Se. Minerals*, 622 F.2d at 764. The court noted *Ewing*'s "total and complete proscription on the district court's power both to undertake a pre-enforcement review of the FDA's determination of probable cause and to enjoin federal officials from acting upon that determination by seizing products or initiating enforcement proceedings under the [FFDCA]." *Id.* at 764

11

n.10.  By seeking to enjoin FDA from interfering with its product, the company

"necessarily sought pre-enforcement review of the FDA's determination that

probable cause existed to seize and to initiate enforcement proceedings against

the . . . product, a review clearly proscribed by *Ewing*."  *Id.* at 764.

Numerous other federal courts have applied *Ewing* to bar attempts to enjoin

FDA enforcement actions under the FFDCA.  *See, e.g.*, *United States v. Alcon

Labs.*, 636 F.2d 876, 882 (1st Cir. 1981); *Premo Pharm. Labs., Inc. v. United

States*, 629 F.2d 795, 801 (2d Cir. 1980); *Pharmadyne Labs., Inc. v. Kennedy*, 596

F.2d 568, 570 (3d Cir. 1979); *Parke, Davis & Co. v. Califano*, 564 F.2d 1200,

1205 (6th Cir. 1977); *Genendo Pharm. N.V. v. Thompson*, 308 F. Supp. 2d 881,

883 (N.D. Ill. 2003).

By seeking to "prohibit[] the Defendants from detaining or seizing DMAA

containing products," Compl. at 12, Hi-Tech necessarily asks this Court to engage

in pre-enforcement review of FDA's enforcement actions.  *See Se. Minerals*, 622

F.2d at 764.  Thus, Hi-Tech's claims for injunctive relief run afoul of *Ewing* and its

progeny and must be dismissed for lack of jurisdiction.[4]

---

[4] That Hi-Tech hurriedly filed this suit two days before the seizure action
commenced is of no matter.  *See, e.g.*, *Se. Minerals*, 622 F.2d at 764; *Genendo*

## B.    Hi-Tech's Statutory Claims Are Not Ripe

Federal courts only have jurisdiction over "cases and controversies of sufficient concreteness to evidence a ripeness for review."  *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997); *see, e.g.*, *Johnson v. Sikes*, 730 F.2d 644, 648 (11th Cir. 1984) (noting that ripeness is both a jurisdictional limit under Article III and a prudential concern about obstacles to the court's exercise of jurisdiction).  The ripeness doctrine ensures that federal courts do not "engag[e] in speculation or wast[e] their resources through the review of potential or abstract disputes."  *Digital Props.*, 121 F.3d at 589.

For a claim to be ripe for adjudication, the court must examine "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."  *Abbott Labs.*, 387 U.S. at 149; *see, e.g.*, *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995).  For an issue to be fit for adjudication, the

*Pharm.*, 308 F. Supp. 2d at 882-83 (no jurisdiction under *Ewing* when the injunctive action against FDA was filed a few weeks before the seizure action). Dismissal will not leave Hi-Tech remediless.  FDA's actions are reviewable in the enforcement action itself.  *See Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (enforcement action provides focus for judicial review to determine whether agency exceeded its statutory powers).  Indeed, Hi-Tech has raised defenses to the seizure of its products, which overlap almost entirely with Hi-Tech's claims in its injunction Complaint.  *Compare* ECF No. 26 *with* ECF No. 41-1.

"finality requirement" must be satisfied.  *Williamson Cnty. Reg'l Planning*

*Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 193 (1985).  The finality

requirement depends upon whether an "initial decisionmaker has arrived at a

definitive position on the issue that inflicts an actual, concrete injury."  *Id.*

Hi-Tech's statutory claims (first through fifth causes of action) are not ripe

for two reasons.[5]  First, none of FDA's actions constitute final agency action

meeting the APA's statutory predicate for judicial review.  Second, Hi-Tech has

failed to exhaust the available administrative remedies that would have placed all

relevant issues before FDA and resulted in a final agency decision.

### 1.  <u>There has been no final agency action</u>

In challenges to administrative actions, the ripeness principle of finality is

further embedded into the jurisdictional framework through the APA's statutory

requirement of "final agency action" as a basis for judicial review.  5 U.S.C. § 704;

---

[5] It is well established that declaratory relief is available only if jurisdiction
otherwise exists.  *See* 28 U.S.C. § 2201(a); *Public Serv. Comm'n of Utah v. Wycoff
Co.*, 344 U.S. 237, 242 (1952); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S.
667, 671-72 (1950).  Because Hi-Tech's APA claims are not ripe, this Court
should decline to exercise jurisdiction over Hi-Tech's declaratory claim.  *See Smith
v. Casey*, 741 F.3d 1236, 1244-45 (11th Cir. 2014) (affirming dismissal of
declaratory claim as unripe for lack of final agency action).

*see, e.g.*, *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990); *Miss. Chem. Corp. v. EEOC*, 786 F.2d 1013, 1016 (11th Cir. 1986).[6] For an agency action to be final, the action "must mark the consummation of the agency's decisionmaking process" and "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotations omitted); *see, e.g.*, *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992). A federal court lacks jurisdiction when there has been no final agency action. *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003); *see Miss. Chem.*, 786 F.2d at 1016 ("[A] court's determination that agency action is not 'final agency action' ends its inquiry.").

Hi-Tech complains of three types of FDA actions related to DMAA: (1) issuing warning letters, *see* Compl. ¶¶ 19, 21; (2) making statements on FDA's website, *see id.* ¶ 20; and (3) administratively detaining Hi-Tech's products, *see id.* ¶ 22. None of these actions individually or collectively constitute final agency action and, therefore, the APA claims should be dismissed.

---

[6] This Court applies the APA's general review provisions because DSHEA does not provide for review of agency actions. *See Lujan*, 497 U.S. at 882. Nor does DSHEA provide a private cause of action. *See NVE,* 436 F.3d at 189.

First, Hi-Tech itself never received a warning letter regarding its products containing DMAA, *id.* ¶ 22,[7] and even if it had, courts consistently have held that FDA warning letters do not constitute final agency action. *See, e.g.*, *Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 944-45 (D.C. Cir. 2012) ("FDA warning letters do not represent final agency action subject to judicial review."); *Cody Labs., Inc. v. Sebelius*, 446 F. App'x 964, 969 (10th Cir. 2011) ("It appears that every court to consider the question has held that an FDA warning letter does not constitute 'final agency action.'"); *Dietary Supplement Coal., Inc. v. Sullivan*, 978 F.2d 560, 563 (9th Cir. 1992); *Schering Corp. v. Heckler*, 779 F.2d 683, 686 n.18 (D.C. Cir. 1985).

Second, FDA statements about DMAA on its website do not constitute final agency action. *See* 21 C.F.R. § 10.85(k). In *Southeastern Minerals*, the court concluded FDA's "general statement of agency policy," which described FDA's "formal position" that the product in question could not be used legally, was not

---

[7] Hi-Tech, of course, lacks standing to pursue a claim based on FDA's interactions with other companies, *see, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992); *Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir. 1994), as Judge Ketanji Jackson recognized prior to transferring this action, *see* Mot. Hr'g Tr. 45, July 22, 2014 (Ex. 1).

final agency action.  *Se. Minerals*, 622 F.2d at 764 & n.11, 766.  Other courts are in accord.  *See, e.g.*, *Holistic Candlers*, 664 F.3d at 945 (statements about product on FDA's website under the heading "[e]nforcement" not final agency action); *Clinical Reference Lab., Inc. v. Sullivan*, 791 F. Supp. 1499, 1502 n.4, 1504 (D. Kan. 1992) (FDA officials' statements in FDA newsletter about product's legal status not final agency action), *rev'd in part on other grounds*, *United States v. Undetermined Number of Unlabeled Cases*, 21 F.3d 1026 (10th Cir. 1994).

Third, FDA's administrative detention of Hi-Tech's products does not constitute final agency action.  *See, e.g.*, *Se. Minerals*, 622 F.2d at 764 (no final agency action even when FDA had brought multiple seizure actions); *Dietary Supplement Coal.*, 978 F.2d at 563-64; *Genendo Pharm.*, 308 F. Supp. 2d at 885; *Clinical Reference Lab.*, 791 F. Supp. at 1504.  Rather, it reflects only FDA's belief that an FFDCA violation has occurred, the correctness of which remains subject to formal adjudication in the seizure action.  *See Genendo Pharm.*, 308 F. Supp. 2d at 885; *Clinical Reference Lab.*, 791 F. Supp. at 1504.

Even viewing FDA's actions with respect to dietary supplements containing DMAA in their totality, there is no legally cognizable final agency action.  *See Se. Minerals*, 622 F.2d at 764 (multiple seizures and FDA policy statement that seized

product could not be used legally was not final agency action); *Schering Corp.*, 779 F.2d at 686 n.18 (FDA officials' statements, coupled with FDA's position in seizure actions, not final agency action). Thus, Hi-Tech's APA claims must be dismissed for lack of jurisdiction because there has been no final agency action.

## 2. Hi-Tech failed to exhaust its administrative remedies

Hi-Tech's APA claims also are unripe and must be dismissed because Hi-Tech failed to exhaust its administrative remedies. Exhaustion of administrative remedies generally is required before proceeding to federal court. *See Bowen v. City of New York*, 476 U.S. 467, 484 (1986); *Taylor v. Appleton*, 30 F.3d 1365, 1367 n.3 (11th Cir. 1994). The APA specifically provides for judicial review over final agency actions, which first requires a plaintiff to "exhaust[] all administrative remedies expressly prescribed by statute or agency rule." *Darby v. Cisneros*, 509 U.S. 137, 146 (1993); *see Rogers v. Bennett*, 873 F.2d 1387, 1392 (11th Cir. 1989). The Eleventh Circuit considers exhaustion of administrative remedies under the APA to be a jurisdictional requirement. *See Ibarra v. Swacina*, 628 F.3d 1269, 1269 (11th Cir. 2010) (per curiam).[8]

---

[8] If not a jurisdictional defect, dismissal for failure to exhaust administrative

FDA regulations require that, "before any legal action is filed," a party's claim seeking action or inaction from the agency "must first be the subject of a final administrative decision based on a ['citizen'] petition submitted under [21 C.F.R.] § 10.25(a)." 21 C.F.R. § 10.45(b). For this reason, courts generally require exhaustion of FDA's citizen petition process when there has been no final agency action. *See, e.g.*, *Cody Labs.*, 446 F. App'x at 969 ("Courts have often dismissed suits against the FDA for failure to utilize the citizen petition procedure."); *Ass'n of Am. Physicians & Surgeons, Inc. v. FDA*, 539 F. Supp. 2d 4, 22 (D.D.C. 2008), *aff'd*, 358 F. App'x 179 (D.C. Cir. 2009) (per curiam).

Litigants in postures similar to Hi-Tech have had their suits dismissed for failing to exhaust the citizen petition process. In *Genendo Pharmaceuticals*, the court recognized that, even with a pending seizure action, claims against FDA were unripe because "[p]laintiffs could have sought a formal administrative ruling from the FDA on the legality of its proposed importation by filing either a citizen petition or a request for an advisory opinion with the agency." 308 F. Supp. 2d at

remedies is still warranted under Rule 12(b)(6) for failure to state a claim. *See Galvez v. IRS*, 448 F. App'x 880, 887-88 (11th Cir. 2011) (per curiam) (dismissing claim seeking judicial review of an Internal Revenue Service action pursuant to Rule 12(b)(6) for failure to exhaust administrative remedies).

886; *see Clinical Reference Labs.*, 791 F. Supp. at 1504; *see also BBK Tobacco & Foods, LLP v. FDA*, 672 F. Supp. 2d 969, 977-78 (D. Ariz. 2009).

Hi-Tech has not alleged that it exhausted its administrative remedies before filing suit. To the contrary, Hi-Tech bypassed the administrative process and failed to provide FDA an opportunity to consider and potentially resolve any complex, regulatory issues. At the least, the administrative process might have narrowed or crystalized the issues in contention. *See Parisi v. Davidson*, 405 U.S. 34, 37 (1972) (exhaustion doctrine allows administrative agency to perform functions within its special competence, *i.e.*, to make a factual record, apply its expertise, and correct its own errors so as to moot judicial controversies). Hi-Tech's failure to exhaust its administrative remedies is fatal to its statutory claims.

**C.     Any Claims Related To FDA's Detention Order Are Moot**

Hi-Tech conceded before the D.C. court, and Judge Ketanji Jackson agreed, that any relief it seeks from the administrative detention order was mooted when that order was lifted. *See* Mot. Hr'g Tr. 35, 45, July 22, 2014 (Ex. 1); Detention Termination Notice, ECF No. 41-13, at 6-7. "[A] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Soliman v. United States ex rel. INS*, 296 F.3d 1237, 1242 (11th Cir. 2002).

Hi-Tech's moot claims must be dismissed for lack of jurisdiction.  *See, e.g.*, *Al*

*Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001).

## II.     HI-TECH'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Under Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed

if it fails to state grounds upon which the court can grant relief.  In reviewing a

Rule 12(b)(6) motion, the court must treat the complaint's factual allegations as

true and construe them in the light most favorable to the plaintiff.  *Speaker v. U.S.*

*Dep't of Health & Human Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010).  To

survive a motion to dismiss, the complaint must contain sufficient factual matter,

accepted as true, to state a claim for relief that is "plausible on its face."  *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint "supported by mere

conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), or with

"unsupported conclusions of law or of mixed fact and law," *McGinley v. Houston*,

361 F.3d 1328, 1330 (11th Cir. 2004), does not plausibly state a claim.  Moreover,

a court may dismiss claims under Rule 12(b)(6) "when, on the basis of a

dispositive issue of law, no construction of the factual allegations will support the

cause of action."  *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992

F.2d 1171, 1174 (11th Cir. 1993).

Hi-Tech's Complaint must be dismissed for failure to state a cognizable claim. The Complaint is premised on the clearly erroneous legal assertion that FDA may proceed against dietary supplements containing DMAA only under the FFDCA's dietary supplement adulteration provisions and only after FDA has first banned DMAA through rulemaking. Moreover, Hi-Tech's fourth cause of action does not state a cognizable constitutional due process violation.

### A. FDA Is Not Limited To DSHEA's Adulteration Provisions And Is Not Required To Proceed By Rulemaking

Contrary to Hi-Tech's legal assertions, FDA is not required to bring enforcement actions against dietary supplements containing DMAA only under DSHEA's adulteration provisions, and then only when "there has been a proper rule making procedure pursuant to DSHEA." Compl. at 12; *see, e.g.*, *id.* at 14, 21 & ¶¶ 3, 20, 29; *see also id.* ¶ 32 ("Defendants continue to disregard their statutory obligations under DSHEA by making these demands without formal rule making."). Hi-Tech cites no authority to support these legal propositions, as indeed it cannot, because neither the FFDCA nor DSHEA contain such limitations or requirements.

As set forth above, Hi-Tech's dietary supplements and their components containing DMAA are deemed to be food under the FFDCA, *see* 21 U.S.C. §§ 321(f), (ff), and are subject to the FFDCA's food provisions because they are not expressly exempted therefrom. *See id.* §§ 321(f), (s), (ff). Nothing in the FFDCA exempts food that contains an unapproved food additive from the FFDCA's food additive and food adulteration provisions simply because it also is a dietary supplement. *See* FDA, *Guidance for Industry*, *supra* at 5.

Moreover, DSHEA did not modify the enforcement mechanisms, including seizure actions, available to FDA. *See NVE,* 436 F.3d at 186. Nowhere in DSHEA is rulemaking required as a prerequisite to enforcement. *See generally* DSHEA, Pub. L. 103-417, 108 Stat. 4325. Nor does Hi-Tech cite to any authority for such a requirement. FDA thus retains the statutory authority and discretion to initiate enforcement actions and/or to proceed by rulemaking. *See* 21 U.S.C. §§ 371(a), 372(a)(1)(A); *NVE*, 436 F.3d at 186; *cf. United States v. Articles of Hazardous Substance*, 588 F.2d 39, 42 (4th Cir. 1978) (noting that under Federal Hazardous Substances Act, modeled after 21 U.S.C. § 334's seizure provisions, government may file seizure action without first issuing a rulemaking). Because Hi-Tech's

Complaint is predicated upon a conclusory and erroneous proposition of law, it must be dismissed.

**B.    Hi-Tech Failed To Allege A Cognizable Due Process Clause Violation**

Hi-Tech's fourth cause of action alleges a Fifth Amendment Due Process Clause violation based on issuance of the administrative detention order "without notice," Compl. ¶ 2, and generalized claims that it is being required to stop manufacturing and recall its products, *see id.* ¶ 52.  Neither allegation states a cognizable due process violation and must be dismissed.

As a procedural matter, the seizure action provides Hi-Tech with "a full hearing before the court."  *Ewing*, 339 U.S. at 598.  In *Ewing*, the Supreme Court recognized "it is not a requirement of due process that there be judicial inquiry before discretion can be exercised."  *Id.* at 599.  Instead, because "only property rights are concerned," *id.*, the judicial proceeding accompanying an FFDCA seizure action "satisfies the requirements of due process."  *Id.* at 598.

Moreover, Hi-Tech's allegations about its purported injuries resulting from these enforcement activities are contradictory, for it claims variously and inconsistently that its purported injuries are both conditional and actual.  *Compare*

*id.* ¶ 25 (alleging harm "*should* it be forced to cease" manufacturing, marketing, or selling products) (emphasis added), *and id.* ¶ 26 (alleging harm "*if* it is forced to recall" products) (emphasis added), *with id.* ¶ 52 (alleging FDA is "*requiring*" it to cease manufacturing products and "*seeking to order*" it to recall products) (emphasis added). Despite Hi-Tech's threadbare and conclusory allegation that FDA's "actions have injured and will continue to injure" it, *id.*, ¶ 53, all of its alleged injuries are conditional upon the outcome of the seizure action.

Finally, to the extent Hi-Tech alleges "harm to its business reputation," *id.* ¶¶ 25-26, reputational injuries are not protected by the Due Process Clause. *See Paul v. Davis*, 424 U.S. 693, 701-02 (1976); *Behrens v. Regier*, 422 F.3d 1255, 1259 (11th Cir. 2005). Indeed, the *Ewing* Court recognized that "mere institution of proceedings" under the FFDCA can harm a business, but still rejected a due process challenge to the FFDCA's seizure provisions. *Ewing*, 339 U.S. at 599.

Accordingly, Hi-Tech has failed plausibly to allege a Fifth Amendment claim, requiring that it be dismissed under Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' Motion to Dismiss Hi-Tech's Complaint.

Dated: November 10, 2014

Respectfully submitted,

OF COUNSEL:

SALLY QUILLIAN YATES
United States Attorney

WILLIAM B. SCHULTZ
General Counsel

ELIZABETH H. DICKINSON
Chief Counsel
Food and Drug Division

BY:     /s/  David A. O'Neal
DAVID A. O'NEAL
Assistant United States Attorney
Georgia Bar No. 342071
Richard B. Russell Federal Bldg.
75 Spring Street, S.W.
Suite 600
Atlanta, Georgia  30303
Telephone:  (404) 581-6224
Facsimile:  (404) 581-6163
E-mail:  David.Oneal@usdoj.gov

PERHAM GORJI
Deputy Chief Counsel, Litigation

LESLIE COHEN
Associate Chief Counsel for
Enforcement
United States Department of Health
and Human Services
Office of the General Counsel
Food and Drug Administration
10903 New Hampshire Ave.
WO Bldg. 32, Rm. 4301
Silver Spring, MD 20993
(301) 796-0551

JOYCE R. BRANDA
Acting Assistant Attorney General

JONATHAN F. OLIN
Deputy Assistant Attorney General
Civil Division

MICHAEL S. BLUME
Director

ANDREW E. CLARK
Assistant Director

BY:     /s/  James W. Harlow
JAMES W. HARLOW

Trial Attorney
Consumer Protection Branch
450 Fifth Street, NW
Room 6400 – South
Washington, D.C.  20001
(202) 514-6786
James.w.harlow@usdoj.gov

## CERTIFICATION OF TYPEFACE COMPLIANCE

I hereby certify, pursuant to Local Rules 5.1 and 7.1(D), that the foregoing

motion and accompanying memorandum has been prepared using Times New

Roman, 14 point font.


____/s/  David A. O'Neal____          ____/s/  James W. Harlow____
DAVID A. O'NEAL                      JAMES W. HARLOW
Assistant United States Attorney     Trial Attorney